**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VINAY KUMAR, Derivatively on Behalf of Nominal Defendant ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, <br><br> Plaintiff, <br><br> v. <br><br> LABEED DIAB, JOSEPH JORDAN, JOHN L. LARSEN, JOHN MALDONADO, CARMINE PETRONE, JOANNE M. BURNS, TERESA SPARKS, JAMES E. PARISI, ANDREW A. MCKNIGHT, JOSHUA A. PACK, AARON F. HOOD, CARMEN A. POLICY, MARC FURSTEIN, LESLEE COWEN, RAFEKET RUSSAK-AMINOACH, and SUNIL GULATI. <br><br> Defendants, <br><br> and <br><br> ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, <br><br> Nominal Defendant. | Case No. <br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

Plaintiff Vinay Kumar ("Plaintiff"), by and through his undersigned attorneys, brings this Verified Stockholder Derivative Complaint for the benefit of nominal defendant, ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVII"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duty, violations of the Securities Exchange

Act of 1934 (the "Exchange Act"), and unjust enrichment. Plaintiff's allegations are based upon his personal knowledge, as to himself and his own acts, and upon information and belief developed from the investigation and analysis by Plaintiff's counsel, including without limitation: (i) review and analysis of public filings with the United States Securities and Exchange Commission ("SEC"); (ii) review and analysis of filings in federal court, including pleadings, in the related securities fraud class action captioned *Burbige, et al. v. ATI Physical Therapy, Inc., et al.*, No. 1:21-cv-04349 (the "Securities Class Action") pending in this District; and (iii) review and analysis of press releases, news reports, analyst reports, industry reports, investor conference call transcripts and slides, and other information available in the public domain.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     ATI is an outpatient physical therapy company that owns and operates nearly 900 physical therapy clinics across 25 different states. ATI's clinics offer a variety of services, including physical therapy to treat spine, shoulder, knee, and neck injuries or pain; work injury rehabilitation services; hand therapy; and other specialized treatment services.

2.     FVII was a special purpose acquisition company ("SPAC") formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

3.     On June 17, 2021, ATI became public through a series of transactions with FVII (the "Business Combination").

4.     On July 26, 2021, before the market opened, ATI reported its financial results for second quarter 2021, the period in which the Business Combination was completed. Among other things, ATI reported that "the acceleration of attrition among [its] therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our

labor costs." Though ATI was implementing certain remedial actions, the Company reduced its fiscal 2021 forecast due to the foregoing factors.

5.      On this news, the Company's share price fell $3.62, or 43%, to close at $4.72 per share on July 26, 2021, on unusually heavy trading volume. The share price continued to decline the next trading session by as much as 16%. ATI Stock is now trading at $1.52 as of this date.

6.      These revelations subjected the Company to defending itself in the Securities Class Action, which is now pending in this District.

7.      Plaintiff has not made a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board. The Board is currently composed of seven members, five of whom are named in this action and face a substantial likelihood of liability on the claims alleged herein. Defendant Andrew A. McKnight ("McKnight") participated in the negotiation and finalization of the Business Combination, and up to five different members of the Audit Committee failed in their duties to oversee risk management of the Company, allowing misleading statements to be disseminated to the public. As a result, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.      JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa), this Court has jurisdiction over the claims asserted herein for violations of Section 14(a) and pursuant to Section 21D for violations of the Exchange Act. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1401 because (i) a substantial portion of the transactions and wrongs complained of herein occurred in this District,

and (ii) the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III.   PARTIES

**Plaintiff**

10.    Plaintiff Vinay Kumar has held shares of ATI since at least December 2020, and has continually owned stock since that date.

**Nominal Defendant**

11.    Nominal Defendant ATI is a Delaware corporation with its principal executive offices located at 790 Remington Boulevard, Bolingbrook, IL 60440.  The Company's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ATIP," and its redeemable warrants trade on the NYSE under the symbol "ATIP WS."  Each whole redeemable warrant was exercisable for one share of Class A common stock at an exercise price of $11.50 per share.

**Defendants**

12.    Defendant Labeed Diab ("Diab") served as Chief Executive Officer ("CEO") and a director of ATI from 2019 until his resignation on August 7, 2021.  Diab is named as a defendant in the Securities Class Action.  For 2021, Diab received $2,943,057 in total compensation, of which $1,505,165 was in deferred compensation in connection with his resignation.

13.    Defendant Joseph Jordan ("Jordan") has served as Chief Financial Officer ("CFO") of ATI since 2019.  He currently also serves as a member of the leadership team fulfilling the role of Principal Executive Officer.  Jordan is named as a defendant in the Securities Class Action.  For 2021, Jordan received $1,094,096 in total compensation.

14.    Defendant John L. Larsen ("Larsen") has served as Chair of the Board of ATI since prior to the Business Combination.  According to the Company's website, "Larsen serves as the

Executive Chairman and a member of the Audit Committee and the Chair of the Nominating and Corporate Governance Committee."[1]  For 2021, Larsen received $1,145,602 in total compensation.

15.     Defendant John Maldonado ("Maldonado") has served as a director of ATI since 2016.  Maldonado is a member of the Health Care Compliance Committee, and Nominating and Corporate Governance Committee.   In 2021, Maldonado received $100,000 as annual and committee cash retainers together with restricted stock unit and stock option awards valued at $100,000.

16.     Defendant Carmine Petrone ("Petrone") has served as a director of ATI since 2016 and is Chair of the Compensation Committee.  In 2021, Petrone received $95,000 as annual and committee cash retainers together with restricted stock unit and stock option awards valued at $100,000.

17.     Defendant Joanne M. Burns ("Burns") has served as a director of ATI since 2021 (prior to the Business Combination).   Burns is a member of the Audit Committee and Compensation Committee.  In 2021, Burns received $210,035 in total compensation.

18.     Defendant Teresa Sparks ("Sparks") joined the Company Board in December 2021 and is currently a member of the Audit Committee.  In 2021, Sparks received $99,917 in total compensation.

19.     Defendant James E. Parisi ("Parisi") has served as a director of ATI since 2021 (prior to the Business Combination).  Parisi is Chair of the Audit Committee and a member of the Nominating and Corporate Governance Committee.  In 2021, Parisi received $187,952 in total compensation.

---

[1]ATI      Physical       Therapy,       Governance,       Board       of       Directors, https://investors.atipt.com/governance/board-of-directors/default.aspx (visited April 21, 2022).

20.     Defendant McKnight served as CEO and director of FVII from its inception until the Business Combination.  He has served as a director of ATI since the Business Combination. McKnight solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the definitive proxy statement dated May 14, 2021 (the "Proxy Statement").  McKnight is named as a defendant in the Securities Class Action.  In 2021, McKnight received $75,000 as annual and committee cash retainers together with restricted stock unit and stock option awards valued at $100,000.

21.     Defendant Joshua A. Pack ("Pack") served as Chairman of the Board of FVII from its inception until the Business Combination.  Pack solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. Pack is named as a defendant in the Securities Class Action.

22.     Defendant Aaron F. Hood ("Hood") served as a director of FVII from its inception until the Business Combination.  Hood solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.  Hood is named as a defendant in the Securities Class Action.

23.     Defendant Carmen A. Policy ("Policy") served as a director of FVII from its inception until the Business Combination.  Policy solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. Policy is named as a defendant in the Securities Class Action.

24.     Defendant Marc Furstein ("Furstein") served as a director of FVII from its inception until the Business Combination.  Furstein solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. Furstein is named as a defendant in the Securities Class Action.

25.     Defendant Leslee Cowen ("Cowen") served as a director of FVII from its inception until the Business Combination.  Cowen solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.  Cowen is named as a defendant in the Securities Class Action.

26.     Defendant Rafeket Russak-Aminoach ("Russak-Aminoach") served as a director of FVII from its inception until the Business Combination.  Russak-Aminoach solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.  Russak-Aminoach is named as a defendant in the Securities Class Action.

27.     Defendant Sunil Gulati ("Gulati") served as a director of FVII from its inception until the Business Combination.  Gulate solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.  Gulati is also named as a defendant in the Securities Class Action.

28.     Defendants Diab, Jordan, Larsen, Maldonado, Petrone, Burns, Sparks, Parisi, and McKnight are sometimes referred to hereinafter as the "ATI Defendants."  Defendants McKnight, Pack, Hood, Policy, Furstein, Cowen, Russak-Aminoach, and Gulati are sometimes referred to hereinafter as the "FVII Defendants."  Defendants Diab, Jordan, Larsen, Maldonado, Petrone, Burns, Sparks, Parisi, McKnight, Pack, Hood, Policy, Furstein, Cowen, Russak-Aminoach, and Gulati are sometimes referred to hereinafter as the "Individual Defendants."

IV.     **SUBSTANTIVE ALLEGATIONS**

A.      **Background**

29.     FVII was a SPAC formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.  It completed its initial public offering ("IPO") on August 12, 2020, selling

34.5 million units at $10.00 per unit. Each unit consists of one share of FVII Class A common stock and one-fifth of one redeemable public warrant of FVII, whereby each public warrant entitles the holder to purchase one share of FVII Class A common stock at an exercise price of $11.50 per share.

30.     FVII had considerable discretion in identifying and consummating a business combination, subject to three (3) general limitations imposed by the Amended and Restated Certificate of Incorporation:

- *First*, FVII must acquire a target business with a fair market value equal to at least 80% of the net assets held in the Trust Account following the IPO (net of amounts disbursed for working capital and excluding the amount of any deferred underwriting discount);

- *Second*, FVII only had 24 months from the closing date of the IPO to complete a business combination, or else its corporate existence would cease, except for purposes of winding up its affairs and liquidating. As such, FVII was required to hold the approximately $345 million of proceeds from its IPO in a trust account, which were to be released only upon the consummation of a business combination or liquidation;

- *Third*, if FVII's stockholders approved an amendment to the Certificate of Incorporation that would affect the substance or timing of FVII's obligation to redeem 100% of the public shares if FVII did not complete a business combination on time, FVII was required to provide the holders of its public shares with the opportunity to redeem all or a portion of their public shares upon approval of any such amendment.

31.     ATI is an outpatient physical therapy company owning and operating nearly 900 physical therapy clinics across 25 states.  ATI's clinics offer a variety of services, including physical therapy to treat spine, shoulder, knee, and neck injuries or pain; work injury rehabilitation services; hand therapy; and other specialized treatment services.

32.     On February 22, 2021, FVII announced its agreement to take ATI public.

33.     Subsequently, on June 17, 2021, ATI became public through the Business Combination.

**B.      The Individual Defendants Caused the Company to Issue Materially Misleading Statements**

34.     On April 1, 2021, the Individual Defendants caused the Company to file additional proxy materials with the SEC with PowerPoint slides for ATI's Analyst Day presentation. Regarding labor costs, the Company stated that in fiscal year 2020, it made "[c]ontinued improvements in clinical labor management model to allow providers to practice at the top of their respective licenses" and ATI "Accelerated Enhancements During COVID," including "Accelerated [its] staffing strategy."  It also claimed that "ATI is the Employer of Choice for PT Clinicians," touting its retention of physical therapists:



35. On May 14, 2021, the FVII Defendants filed the Proxy Statement on Schedule 14A, soliciting votes in favor of the Business Combination of FVII and Wilco Holdco. The Proxy Statement purported to warn that the Company's labor costs "***may*** increase," stating in relevant part:

> ***The Company's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability.***
>
> The Company's ability to attract and retain clinical talent is critical to its ability to provide high quality care to patients and successfully cultivate and maintain strong relationships in the communities it serves. If the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, management and support personnel, its business may decrease and its revenues may decline. The Company competes with other healthcare providers in recruiting and retaining qualified management, physical therapists and other clinical staff and

support personnel responsible for the daily operations of its business, financial condition and results of operations.

The Company may also experience increases in its labor costs, primarily due to higher wages and greater benefits required to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability. Furthermore, while the Company attempts to manage overall labor costs in the most efficient way, its efforts to manage them may have limited effectiveness and may lead to increased turnover and other challenges.

36. On May 20, 2021, ATI issued a press release announcing its first quarter 2021 financial results, stating in relevant part:

". . . While certain geographies currently exceed 100% of pre-COVID visit volumes (2019 comparative), others are still in process of recovering. Across our portfolio, visit volumes were in the high 70%'s of pre-COVID levels as we entered 2021, increasing to approximately 83% as we exited April 2021," said Labeed Diab, Chief Executive Officer of ATI Physical Therapy. . . .

"As we look ahead to the remainder of 2021, we are focused on accelerating hiring to serve outsized demand in specific markets, continuing our growth with a fast pace of new clinic openings and new potential strategic partnerships, and maintaining a high NPS score above 75," concluded Mr. Diab.

"As visits increased each month, *we were able to better leverage fixed costs and improve labor productivity. As volume continues to recover, we are excited to fully utilize our platform and deliver margin improvements*," said Joe Jordan, Chief Financial Officer of ATI Physical Therapy.

37. On May 20, 2021, FVII filed additional proxy materials with the SEC with ATI's financial results for first quarter 2021. It stated that in response to reduced visit volumes during the coronavirus pandemic, "the Company implemented measures to reduce labor-related costs in relation to the reduced visit volumes through reduced working schedules, voluntary and involuntary furloughs and headcount reductions." However, beginning first quarter 2021, visit volumes rebounded and "the Company continues to match its clinical staffing levels accordingly." As a result, "[a]s of March 31, 2021, no Company employees remained on furlough."

11

38.     On May 24, 2021, FVII filed additional proxy materials with the SEC with PowerPoint slides that ATI presented at a healthcare conference in May 2021.  Among other things, the presentation stated that the "Key Focus for Remainder of 2021" included "accelerate[d] hiring to serve outsized demand" and "continue to grow through new clinic openings."  It also included a slide touting a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond" that stated the Company would achieve "significant labor savings through more productive staffing model."  Specifically, it stated:



39. The same May 2021 presentation further stated the Company's purported visibility into 2022 expected EBITDA, including based on "clinic staffing optimization." Specifically, it stated:



40. Each of the above statements in ¶¶35–39 were materially misleading because they failed to disclose:

    a. that ATI was experiencing attrition among its physical therapists;

    b. that ATI faced increasing competition for clinicians in the labor market;

    c. that as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; and

    d.  that as a result of the labor shortage, the Company would open fewer new clinics.

**C.    The Business Combination Is Approved Pursuant to the Misleading Proxy Statement**

41.    On June 17, 2021, ATI issued press release announcing that it had completed the Business Combination, stating in relevant part:

> ATI Physical Therapy, Inc. ("ATI" or the "Company"), a portfolio company of Advent International ("Advent") and one of the nation's largest providers of outpatient physical therapy services, has completed its business combination with [FVII] (NYSE: FAII), a [SPAC].

> The transaction, which was approved on June 15, 2021 by [FVII]'s shareholders, further positions ATI to lead the rapidly growing physical therapy industry, with an emphasis on delivering predictable outcomes for patients with musculoskeletal (MSK) issues. Beginning June 17, 2021, the Company will operate as "ATI Physical Therapy, Inc.," and ATI's shares of Class A common stock will trade on the New York Stock Exchange ("NYSE") under the symbol "ATIP."

**D.    The Truth Emerges**

42.    Before the market opened on July 26, 2021, ATI reported its financial results for second quarter 2021, the period in which the Business Combination was completed. ATI reported, among other things, that "the acceleration of attrition among [its] therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our labor costs."

43.    Though ATI was implementing certain remedial actions, the Company reduced its fiscal 2021 forecast due to the foregoing factors. Specifically, ATI issued a press release that stated, in relevant part:

> "I would like to thank our nationwide team for their dedication, service and tireless effort providing the highest quality clinical care to our patients that makes ATI a leader in the large and growing physical therapy industry," said Labeed Diab, Chief Executive Officer. "We are seeing growing demand for ATI's services, and visit

14

volume increased during the second quarter. However, *the acceleration of attrition among our therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our expectations for labor costs.* We are implementing a range of actions related to compensation, staffing levels and other items to retain and attract therapists across our platform to meet our currently underserved patient demand. *We expect therapist headcount to be below previously anticipated levels for 2021 which, combined with elevated costs for therapists and an unfavorable revenue mix, has caused us to reduce our forecast for 2021.* We continue to have confidence in the underlying fundamentals driving our business and our ability to leverage our strong position in the market to drive growth and value over time."

\*      \*      \*

## 2021 Earnings Forecast

For full year 2021, ATI is now projecting revenue to be in the range of $640 million to $670 million and Adjusted EBITDA to be in the range of $60 million to $70 million, down from $731 million and $119 million, respectively. ATI does not intend to provide revenue guidance as a future guidance metric. The revised expectations reflect the impact of the following developments which are partially offset by continued strong demand for ATI's services:

- The acceleration of attrition in the second quarter and continuing into the third quarter caused, in part, by changes made during the COVID-19 pandemic related to compensation, staffing levels and support for clinicians. ATI has taken swift actions to offset those changes, but the company expects the impact of attrition in the second and third quarters will impact overall profitability for the year.

- Labor market dynamics that increased competition for the available physical therapy providers in the workforce, creating wage inflation and elevated employee attrition at ATI, negatively affecting our ability to capitalize on continued customer demand.

- Decrease in rate per visit primarily driven by continuing less favorable payor and state mix when compared to pre-pandemic profile, with general shift from workers compensation and auto personal injury to commercial and government, and further impacted by mix-shift out of higher reimbursement states.

*Largely in response to the accelerated attrition, ATI is lowering its estimate for new clinic openings, (i.e., de novo and acqui-novo clinics), to be in the range of 55 to 65 clinics from 90 clinics.* Our ability to achieve our revised forecast for the remainder of 2021 depends upon a number of factors, including the success of a

number of steps being taken to significantly reduce attrition of physical therapists and significant hiring of physical therapists

The Company has determined that the revision to its 2021 forecast constitutes an interim triggering event that requires further analysis with respect to potential impairment to goodwill and trade name intangible assets. ***Accordingly, the Company is currently performing interim quantitative impairment testing during the third quarter of 2021***. If it is determined that the fair value amounts are below the respective carrying amounts, the Company will record an impairment charge which could be material.

44.     On this news, the Company's share price fell $3.62, or 43%, to close at $4.72 per share on July 26, 2021, on unusually heavy trading volume.  The share price continued to decline the next trading session by as much as 16%.

45.     In its March 1, 2022 Annual Report filed on SEC Form 10-K ("2021 10-K"), which was signed by Defendants Larsen, Jordan, Maldonado, Petrone, Burns, Parisi, McKnight, and Sparks, the Company admitted the revision to its forecast was a triggering event that had significant ramifications.  The 2021 10-K also contained certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, signed by Defendants Larsen and Jordan attesting to the accuracy of the contents therein.  Specifically,

The Company determined that the revision to its forecast in late July 2021, including the factors related to the revision of its forecast, constituted an interim triggering event that required further analysis with respect to potential impairment to goodwill, trade name indefinite-lived intangible and other assets. Accordingly, the Company performed interim quantitative impairment testing and determined that the fair value amounts were below the respective carrying amounts. As a result, the Company recorded non-cash impairment charges of $419.4 million related to goodwill and $33.7 million related to the trade name indefinite-lived intangible asset as of the June 30, 2021 balance sheet date.

## V.     DAMAGES TO THE COMPANY

46.     As a direct and proximate result of the Individual Defendants' misconduct, ATI has been seriously harmed and will continue to be.  Such harm includes, but is not limited to: (i) legal fees incurred in connection with the defense of the Securities Class Action; (ii) any funds paid to

settle or fund a judgment entered in the Securities Class Action; and (iii) costs incurred from compensation and benefits paid to the defendants who have breached their duties to ATI.

47.     In addition, ATI's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

48.     These actions have irreparably damaged both ATI's corporate image and goodwill. For at least the foreseeable future, ATI will suffer from what is known as the "liar's discount," a term applied to the stock of companies who have been implicated in misleading the investing public, such that ATI's ability to raise equity capital or debt on favorable terms in the future is now and will continue to be impaired.  The Company stands to incur higher marginal costs of capital and debt because of the misconduct.

## VI.    DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.    Fiduciary Duties

49.     By reason of their positions as officers and/or directors of ATI and because of their responsibility to control the business and corporate affairs of the Company, the Individual Defendants owed, and owe, the Company and its stockholders the fiduciary obligations of good faith, loyalty, due care, and candor and were, and are, required to use their utmost ability to control and manage the Company in a just, honest, fair, and equitable manner.

50.     Each Individual Defendant owed, and owes, the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company, as well as the highest obligations of fair dealing and not to act in furtherance of their personal interest or benefit.

51.     In *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009), the Delaware Supreme Court concluded that the "officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty, and that the fiduciary duties of officers are the same as those of directors." The officers of a Delaware corporation are "expected to pursue the best interests of the company in good faith (*i.e.*, to fulfill their duty of loyalty) and to use the amount of care that a reasonably prudent person would use in similar circumstances (*i.e.*, to fulfill their duty of care)." *Hampshire Grp., Ltd. v. Kuttner*, C.A. No. 3607-VCS, 2010 WL 2739995, at *11 (Del. Ch. July 12, 2010).

52.     Because of their positions of control and authority as officers and/or directors of ATI, the Individual Defendants were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with ATI, each of the Individual Defendants had knowledge of material, nonpublic information regarding the Company.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's business, operations, and prospects so that the market price of the Company's stock would be based on truthful and accurate information.

53.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of ATI and was at all times acting within the course and scope of such agency.

54.     To discharge their duties, the officers and directors of ATI were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of ATI were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Maintain and implement an adequate, functioning system of internal controls, such that the affairs and operations of ATI are conducted in accordance with all applicable laws, rules, and regulations;

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence; and

(e)     Truthfully and accurately inform and guide investors and analysts with respect to the business operations of the Company.

55.     Additionally, as a part of their duties of care and loyalty, the Individual Defendants had a fiduciary duty to disclose all material information whenever they voluntarily chose to speak to ATI shareholders, or the market generally, about the business of the corporation. *Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009) ("Corporate fiduciaries can breach their duty of disclosure under Delaware law . . . by making a materially false statement, by omitting a material fact, or by making a partial disclosure that is materially misleading.") (citation omitted); *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998) ("directors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances"); *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996) ("[D]irectors are under a fiduciary obligation to avoid misleading partial disclosures. The law of partial disclosure is likewise clear: 'Once defendants travel[] down the road of partial disclosure . . . they . . . [have] an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events.'") (citation omitted); *Lynch v. Vickers Energy Corp.*, 383 A.2d 278, 281 (Del. 1977) (holding the defendants breached their

fiduciary duty of candor when they failed to disclose material information to minority shareholders to whom they owed a fiduciary duty).

56.     As the Delaware Supreme Court explained in *In re Tyson Foods, Inc. Consol. S'holder Litig.*, No. 1106-CC, 2007 WL 2351071, at *4 (Del. Ch. Aug. 15, 2007), "[w]hen . . . directors communicate with shareholders, they also must do so with complete candor":

> Loyalty.  Good faith.  Independence.  Candor.  These are words pregnant with obligation.  The Supreme Court did not adorn them with half-hearted adjectives. Directors should not take a seat at the board table prepared to offer only conditional loyalty, tolerable good faith, reasonable disinterest or formalistic candor.

### B.     Audit Committee Duties

57.     The charter for the Audit Committee charges members with responsibility for, among other things, "the performance of [ATI's] internal audit function and systems of internal control over financial reporting and disclosure controls and procedures."

58.     Specifically regarding risk management, the charter states that the Audit Committee shall:

> . . . review and discuss with management, the head of the Company's Enterprise Risk Management ("ERM") program, the head of the internal audit function (as applicable) and the independent auditor any significant risks or exposures, (including litigation, financial, and cybersecurity risks) and the Company Group's underlying policies with respect to risk assessment and risk management, and assess the steps management has taken to monitor and control such risks, except with respect to those risks for which oversight has been assigned to other committees of the Board or retained by the Board; and review the Company's annual disclosures concerning the role of the Board in the risk oversight of the Company; . . .

59.     The Company's 2021 10-K states, with respect to the role of the Board in risk oversight, "The Board is responsible for overseeing our risk management process. The Board will focus on our general risk management strategy, the most significant risks facing us, and oversee the implementation of risk mitigation strategies by management.  Our Audit Committee is also responsible for discussing our policies with respect to risk assessment and risk management."

## VII.    DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

60.    Plaintiff brings this action derivatively in the right and for the benefit of ATI to redress injuries suffered, and to be suffered, by ATI as a direct result of breaches of fiduciary duty by the Individual Defendants, contribution for violations of Section 10(b) pursuant to Section 21D of the Exchange Act, and violations of Section 14(a) of the Exchange Act. ATI is named as a nominal defendant solely in a derivative capacity.

61.    Plaintiff will adequately and fairly represent the interests of ATI in enforcing and prosecuting its rights.

62.    Plaintiff has continuously been a shareholder of ATI at times relevant to the wrongdoing complained of and is a current ATI shareholder.

63.    When this action was filed, ATI's Board consisted of eight directors, including defendants Larsen, Maldonado, Petrone, Burns, Sparks, Parisi, and McKnight ("Demand Board").[2] Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, for the reasons set forth below.

**Employee - Defendant McKnight**

64.    At all relevant times, McKnight was FVII's CEO, and therefore was not independent under NYSE listing rules. As an employee and director of FVII, McKnight was substantially involved with the negotiation and finalization of the Business Combination, as detailed in the Proxy Statement. Therefore, he knew or should have known of the attrition of ATI's clinicians and the increasing labor costs. Moreover, as CEO and as alleged herein, McKnight personally issued the misleading statements alleged herein and is named as a defendant in the

---

[2]Non-Party Director Daniel V. Dourney is also a member of the Board.

Securities Class Action. As a result, McKnight would be interested in a demand regarding his own wrongdoing, and demand is futile as to him.

**The Audit Committee - Defendants Larsen, Maldonado, Burns, Sparks, and Parisi**

65.     Larsen, Maldonado, Burns, Sparks, and Parisi served as members of the Audit Committee of ATI at different relevant times during which the misconduct took place, including prior to the Business Combination. As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its risk management. As alleged herein, defendants Larsen, Maldonado, Burns, Sparks, and Parisi failed to oversee the risks impacting the Company, namely the clinician attrition, allowing the materially misleading statements to be disseminated in ATI's SEC filings and other disclosures. Thus, Larsen, Maldonado, Burns, Sparks, and Parisi breached their fiduciary duties and are not disinterested, and demand is excused as to them.

**Demand Is Futile as to the Demand Board Because They Face a Substantial Likelihood of Liability – Defendants Larsen, Maldonado, Petrone, Burns, Sparks, Parisi, and McKnight**

66.     Demand is futile as to the Demand Board for the additional reason that defendants Larsen, Maldonado, Petrone, Burns, Sparks, Parisi, and McKnight face a substantial likelihood of liability for breaching their fiduciary duties of loyalty and good faith and/or care by making or allowing to be made improper statements in the Company's press releases, public filings, and other public statements. including by signing and authorizing the materially false and misleading statements in the Company's 2021 10-K.

67.     Demand Board members further violated Section 14(a) of the Exchange Act by negligently making material misstatements and omitting material facts in connection with their proxy solicitations, as described herein.

68.     Accordingly, all members of the Demand Board face a substantial likelihood of liability for their breaches of fiduciary duty and violations of state and federal law, making any demand upon them futile.

## VIII.   CLAIMS FOR RELIEF

### COUNT I

**Breaches of Fiduciary Duties**
**(Against the Individual Defendants)**

69.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.     Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of ATI's business and affairs, particularly with respect to issues as fundamental as public disclosures.

71.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of ATI.

72.     In breach of their fiduciary duties owed to ATI, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

73.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, ATI has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability in the Securities Class Action, and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

## <u>COUNT II</u>

**Contribution Pursuant to Section 21D of the Exchange Act for Violations of Section 10(b)
(Against Defendants Diab, Jordan, and McKnight)**

74. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

75. The conduct of Defendants Diab, Jordan, and McKnight, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

76. ATI is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If ATI is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

77. As officers, directors and otherwise, Defendants Diab, Jordan, and McKnight had the power or ability to, and did, control or influence, either directly or indirectly, ATI's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

78.     Defendants Diab, Jordan, and McKnight are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

79.     Defendants Diab, Jordan, and McKnight have damaged the Company and are liable to the Company for contribution.

80.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## COUNT III

### Violations of Section 14(a) of the Securities Exchange Act of 1934
### (Against the FVII Defendants)

81.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.     Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's Proxy Statement violated §14(a) and Rule 14a-9 because solicited stockholder approval for the Business Combination while failing to disclose material facts about ATI's business.

83.     In the exercise of reasonable care, the FVII Defendants should have known that the statements contained in the Proxy Statement were materially false and misleading.

84.     The misrepresentations and omissions in the Proxy Statement were material to Company shareholders in voting on the Proxy Statement. The Proxy Statement solicited shareholder votes for: (i) the Business Combination; (ii) issuance of shares; (iii) adoption of an amended and restated certificate of incorporation; (iv) governance provisions; (v) director

nominees; and (vi) incentive plan. The Proxy Statement was an essential link in the accomplishment of the continuation of the FVII Defendants' continued violation of their fiduciary duties.

85.     The Company was damaged as a result of the FVII Defendants' material misrepresentations and omissions in the Proxy Statement.

## COUNT IV

**Unjust Enrichment**
**(Against the ATI Defendants)**

86.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of ATI. The Individual Defendants were unjustly enriched as a result of the compensation and officer and director remuneration they received while breaching their fiduciary duties.

88.     Plaintiff, as a stockholder and representative of ATI, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

89.     Plaintiff, on behalf of ATI, has no adequate remedy at law.

## COUNT V

**Waste of Corporate Assets**
**(Against the Individual Defendants)**

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the period where the wrongdoing described herein occurred.  It resulted in continuous, connected, and on-going harm to the Company.

92.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets by paying excessive compensation, bonuses, and termination payments to its directors and certain of its executive officers and awarding self-interested stock options to certain officers and directors, incurring potentially millions of dollars of legal liability and/or legal costs to defend and resolve allegations of Defendants' unlawful actions in related litigation.

93.     Plaintiff, on behalf of ATI, has no adequate remedy at law.

## COUNT VI

### For Contribution and Indemnification Under Delaware Law
### (Against the Individual Defendants)

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     This claim is brought derivatively on behalf of the Company for contribution and indemnification against the Individual Defendants.

96.     ATI is named as a defendant in the Securities Class Action.  If ATI is ultimately found liable for violating federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of some or all of the Individual Defendants as alleged herein.

97. Accordingly, ATI is entitled to all appropriate contribution and/or indemnification from the Individual Defendants, who are responsible for exposing ATI to liability under Delaware contribution and indemnification law.

98. Plaintiff, on behalf of ATI, has no adequate remedy at law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of ATI, demands judgment as follows:

A. Finding that a stockholder demand on the Demand Board would have been a futile and useless act and Plaintiff may maintain this action on behalf of ATI and that Plaintiff is an adequate representative of the Company;

B. Finding that the Individual Defendants violated the federal securities laws, breached their fiduciary duties to the Company, and were unjustly enriched;

C. Finding against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

D. Directing ATI to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect ATI and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1. a proposal to appropriately test, and then strengthen, the Company's internal operational control functions and the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

2.      a proposal to develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to appropriately test, and then strengthen, the Company's disclosure controls to ensure that all material information is adequately and timely disclosed to the SEC and public; and

4.      a provision to permit the stockholders of ATI to nominate at least three new candidates for election to the Board.

E.      Finding against each of the Individual Defendants in favor of ATI for the amount of damages sustained by ATI, jointly and severally, in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum legal rate allowable by law;

F.      Awarding to ATI restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by these defendants;

G.      Directing the Individual Defendants to establish, maintain, and fully fund effective corporate governance and compliance programs to ensure that ATI's directors, officers, and employees do not engage in wrongful or illegal practices;

H.      Granting appropriate equitable and/or injunctive relief to remedy the Individual Defendants' misconduct, as permitted by law;

I.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

J.      Granting such other and further relief as the Court deems just and proper.

## X.      JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: May 10, 2022

*/s/ Carl V. Malmstrom*

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 545-4653
malmstrom@whafh.com

*Local Counsel for Plaintiff*

**JOHNSON FISTEL LLP**
Michael I. Fistel, Jr.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
MichaelF@johnsonfistel.com

**JOHNSON FISTEL, LLP**
FRANK J. JOHNSON
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
FrankJ@johnsonfistel.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: 8373025F-D612-47EB-98B2-3EBECCB48057

## **VERIFICATION**

I, Vinay Kumar, herby verify that I am familiar with the allegations in the foregoing Verified Stockholder Derivative Complaint, and that I have authorized the filing of the Verified Stockholder Derivative Complaint, and that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  May 6, 2022

DocuSigned by:

*Vinay Kumar*

91310037A038404...

Vinay Kumar